JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: **JUL 1 0 2019**

UNITED STATES OF AMERICA

        -v.-

ALAN KAUFMAN, and
TONY GEORGITON,
        Defendants.

- - - - - - - - - - - - - - - - - -

**SEALED INDICTMENT**

19 Cr. ____

**19 CRIM 504**

**COUNT ONE**
(Conspiracy)

The Grand Jury charges:

**RELEVANT PERSONS AND ENTITIES**

1.  Melrose Credit Union ("Melrose CU"), located in Briarwood, New York, was chartered as a federal credit union in 1922. On or about August 31, 2018, the National Credit Union Administration ("NCUA"), a federal agency charged with oversight of credit unions, liquidated Melrose CU. At the time of its liquidation, Melrose CU had approximately 20,000 members and assets of approximately $1.1 billion. At all times relevant to this indictment, Melrose CU provided a variety of financial services and products to its members, although its primary business focus was taxi medallion lending in New York City, Philadelphia, and Miami.

2.  At all times relevant to this Indictment, ALAN KAUFMAN, the defendant, was the Chief Executive Officer ("CEO")

and Treasurer of Melrose CU, with the authority to approve loans by Melrose CU. On or about July 5, 2016, KAUFMAN was removed as CEO by Melrose CU's Board of Directors (the "Melrose Board").

3. At all times relevant to this Indictment, TONY GEORGITON, the defendant, was a member and customer of Melrose CU, and the owner of several businesses.

## MELROSE CU ANTI-BRIBERY POLICY

4. At all times relevant to this Indictment, Melrose CU maintained an anti-bribery policy (the "Anti-Bribery Policy"), which, in accordance with federal law, generally prohibited Melrose CU officers from accepting corrupt payments. Specifically, the Anti-Bribery Policy provided, in part, that all Melrose CU officers were "prohibited from soliciting for themselves or for a third party (other than the Credit Union itself) anything of value from anyone in return for any business, service, or confidential information of the Credit Union; and from accepting anything of value from anyone in connection with the business of the Credit Union, either before or after a transaction is discussed or consummated."

5. At all times relevant to this Indictment, Melrose CU also maintained an employee handbook (the "Handbook"), which provided, in part, that, "[e]mployees must decline or return any gift or gratuity valued in excess of One Hundred dollars ($100)

from any member, vendor, supplier, or other person doing business with Melrose Credit Union. In doing so, please explain that Melrose Credit Union prohibits Employees from accepting gifts or gratuities to ensure that business decisions, transactions, and services are provided on an objective and professional basis."

6. On various dates during the course of his employment at Melrose CU, ALAN KAUFMAN, the defendant, signed forms acknowledging that he had read the Handbook and understood that it was his responsibility to comply with the policies contained therein.

### THE FIRST BRIBERY SCHEME

7. As detailed further below, from in or about 2010 through in or about 2015, ALAN KAUFMAN, the defendant, corruptly accepted and agreed to accept money and other things of value, including free housing, from TONY GEORGITON, the defendant. In exchange, KAUFMAN personally approved millions of dollars in loans from Melrose CU, and the favorable refinancing of over $60 million in pre-existing loans, for GEORGITON and GEORGITON's companies. KAUFMAN also arranged for Melrose CU to pay over $2 million to a company owned by GEORGITON for the naming rights to a ballroom in Queens, New York, and took GEORGITON out for

lavish dinners paid for by Melrose CU, including dinners in New York, New York.

8. On or about November 30, 2010, TONY GEORGITON, the defendant, purchased a residence in Jericho, New York (the "Jericho Residence") — which had been selected by ALAN KAUFMAN, the defendant — for approximately $630,000. After GEORGITON acquired the Jericho Residence, GEORGITON permitted KAUFMAN to live in the house rent-free for over two years.

9. On or about June 27, 2011 — while ALAN KAUFMAN, the defendant, was living rent-free at the Jericho Residence — KAUFMAN personally approved the refinancing of over $60 million worth of loans at Melrose CU held by a company owned by TONY GEORGITON, the defendant, including an additional cash loan of approximately $5 million. The new loan financing terms provided for a favorable 4.5% interest rate and a 50-year amortization period.

10. On or about October 31, 2012 — while ALAN KAUFMAN, the defendant, was living rent-free at the Jericho Residence — KAUFMAN approved the refinancing of approximately $26 million worth of loans at Melrose CU held by a company owned by TONY GEORGITON, the defendant, including an additional cash loan of approximately $2.5 million, at a favorable 3.25% interest rate and a 50-year amortization period.

11. The head of Melrose CU's loan department ("Melrose Loan Supervisor") refused to sign off on the loans described in paragraphs 9 and 10 of this Indictment because, among other things, the Melrose Loan Supervisor stated, in sum and substance, that the interest rates on the loans were too favorable and the loans did not comply with Melrose CU's loan policy. ALAN KAUFMAN, the defendant, personally approved the loans for TONY GEORGITON, the defendant.

12. On or about September 27, 2011 — while ALAN KAUFMAN, the defendant, was living rent-free at the Jericho Residence — KAUFMAN presented a proposal to Melrose's Board to purchase naming rights for a ballroom under construction in Astoria, Queens (the "Melrose Ballroom") for $2 million. The Melrose Ballroom was owned by a company owned by TONY GEORGITON, the defendant (the "GEORGITON Company"). KAUFMAN did not disclose to the Melrose Board that he was living rent-free in a house owned by GEORGITON at the time he sought Board approval for the naming rights acquisition.

13. The Melrose Board approved the naming rights acquisition for the Melrose Ballroom on certain conditions, including that no payments be made by Melrose CU to the GEORGITON Company until the Melrose Ballroom was fully constructed. Despite this condition, KAUFMAN issued the first

5

payment to the GEORGITON Company in December 2012, before the construction of the Melrose Ballroom had been completed.

14. On or about October 14, 2011, ALAN KAUFMAN, the defendant, executed a naming rights agreement between Melrose CU and the GEORGITON Company. On or about October 21, 2011, Melrose CU's director of marketing (the "Marketing Director") told KAUFMAN, in sum and substance, that the naming rights for the Melrose Ballroom were worth only approximately $50,000 a year and suggested that the Marketing Director would have declined to acquire the naming rights because they were of minimal marketing value to Melrose CU. Nevertheless, KAUFMAN proceeded with the deal.

15. Over the next four years, Melrose CU paid approximately $2 million to the GEORGITON Company for the naming rights to the Melrose Ballroom.

16. On or about February 1, 2013, ALAN KAUFMAN, the defendant, purchased the Jericho Residence from TONY GEORGITON, the defendant, for $630,000 — the same price that GEORGITON had paid to acquire the house over two years earlier. KAUFMAN obtained the money used to purchase the Jericho Residence from GEORGITON, in part, from (i) a $200,000 loan from Melrose CU that was co-signed by GEORGITON and secured by GEORGITON's shares at Melrose CU; and (2) a $240,000 unsecured personal loan

extended by GEORGITON to KAUFMAN, for which no promissory note was executed. GEORGITON never made a demand for payment on the personal loan and KAUFMAN never made a payment on the personal loan.

17. ALAN KAUFMAN, the defendant, never disclosed to the Melrose Board that TONY GEORGITON, the defendant, had provided, or assisted, KAUFMAN with two loans to purchase the Jericho Residence. Nor did KAUFMAN disclose to the Melrose Board that he had lived in the Jericho Residence rent-free between in or about November 2010 and February 2013.

### Statutory Allegations

18. From at least in or about 2010 through at least in or about 2015, in the Southern District of New York and elsewhere, ALAN KAUFMAN and TONY GEORGITON, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Sections 215(a)(1) and 215(a)(2).

19. It was a part and object of the conspiracy that TONY GEORGITON, the defendant, and others known and unknown, would and did corruptly give, offer, and promise a thing of value greater than $1,000 to a person, with the intent to influence and reward an officer, director, employee, agent, and attorney

of a financial institution, to wit ALAN KAUFMAN, the CEO of Melrose CU, in connection with business and a transaction of such institution, in violation of Title 18, United States Code, Section 215(a)(1).

20. It was further a part and object of the conspiracy that ALAN KAUFMAN, the defendant, as an officer, director, employee, agent, and attorney of a financial institution, would and did corruptly solicit and demand for the benefit of a person, and corruptly accepted and agreed to accept, a thing of value greater than $1,000 from TONY GEORGITON, the defendant, and others, known and unknown, with the intent to be influenced and rewarded in connection with business and a transaction of such institution, in violation of Title 18, United States Code, Section 215(a)(2).

### Overt Acts

21. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. On or about January 3, 2010, ALAN KAUFMAN, the defendant, took TONY GEORGITON, the defendant, to a dinner at a restaurant in New York, New York, and used approximately $300 in Melrose CU funds to pay for that dinner.

   b. On or about March 5, 2010, ALAN KAUFMAN, the defendant, took TONY GEORGITON, the defendant, to a dinner at a restaurant in New York, New York, and used approximately $800 in Melrose CU funds to pay for that dinner.

   c. On or about October 21, 2010, ALAN KAUFMAN, the defendant, caused an email to be sent from a law firm located in New York, New York, for the purpose of facilitating the purchase of the Jericho Residence by TONY GEORGITON, the defendant.

   d. On or about December 14 and 20, 2012, ALAN KAUFMAN, the defendant, caused emails to be sent from a title agency located in New York, New York, for the purpose of facilitating KAUFMAN's purchase of the Jericho Residence from TONY GEORGITON, the defendant.

   (Title 18, United States Code, Section 371.)

### COUNT TWO
(Bribery – ALAN KAUFMAN)

The Grand Jury further charges:

22. The allegations contained in paragraphs 1 through 17 and 21 of this Indictment are repeated and realleged as if fully set forth herein.

23. From at least in or about 2010 through at least in or about 2015, in the Southern District of New York and elsewhere, ALAN KAUFMAN, the defendant, as an officer, director, employee, agent and attorney of a financial institution, to wit, Melrose

9

CU, did corruptly solicit and demand for the benefit of a person, and corruptly accepted and agreed to accept, a thing of value greater than $1,000 from a person, to wit, TONY GEORGITON, the defendant, with the intent to be influenced and rewarded in connection with business and a transaction of such institution, in violation of Title 18, United States Code, Section 215(a)(2).

(Title 18, United States Code, Section 215(a)(2) and 2.)

## COUNT THREE
(Bribery — TONY GEORGITON)

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 17 and 21 of this Indictment are repeated and realleged as if fully set forth herein.

25. From at least in or about 2010 through in or about 2015, in the Southern District of New York and elsewhere, TONY GEORGITON, the defendant, did corruptly give, offer, and promise a thing of value greater than $1,000 to a person, with the intent to influence and reward an officer, director, employee, agent, and attorney of a financial institution, to wit ALAN KAUFMAN, the CEO of Melrose CU, in connection with business and a transaction of such institution, in violation of Title 18, United States Code, Section 215(a)(1).

(Title 18, United States Code, Section 215(a)(1) and 2.)

**COUNT FOUR**
(Bribery - ALAN KAUFMAN)

The Grand Jury further charges:

**THE SECOND BRIBERY SCHEME**

26. From in or about 2010 through in or about 2015, ALAN KAUFMAN, the defendant, solicited, agreed to accept, and accepted lavish vacations and other gifts worth tens of thousands of dollars from a media company located in New York, New York ("Media Company-1"), in exchange for KAUFMAN's approval of increased advertising spending by Melrose CU with Media Company-1. KAUFMAN did not disclose to the Melrose Board that KAUFMAN accepted the trips and gifts paid for by Company-1. The trips paid for by Company-1 were to vacation destinations, and KAUFMAN was accompanied on each trip by his girlfriend.

27. For example, Media Company-1 paid for the following trips for ALAN KAUFMAN, the defendant, in exchange for KAUFMAN approving increased advertising spending by Melrose CU with Media Company-1:

    a. In or about August 2010, Media Company-1 paid for KAUFMAN and his girlfriend, who also worked at Melrose CU, to fly to Paris, France, stay at the Four Seasons George V Paris, and participate in various activities, including golfing.

    b. In or about January 2012, Media Company-1 paid for KAUFMAN and his girlfriend to fly to Maui, Hawaii, stay at

11

the Four Seasons in Wailea, and participate in various activities, including golfing and spa treatments.

   c.   In or about 2013, Media Company-1 paid for KAUFMAN and his girlfriend to attend the Super Bowl in New Orleans, including game tickets, flights, and lodging.

   28.   In order to qualify for these vacations, ALAN KAUFMAN, the defendant, was required to increase Melrose CU's advertising spending at Media Company-1 by an incremental amount over time. For example, on or about September 23, 2014, the sales employee at Media Company-1 responsible for the Melrose CU account emailed KAUFMAN and stated, in part, "[O]ur incentive trip is back . . . Italy is our May trip . . . Now the details . . . we do require an incremental spend of 125k in Q1." After a further exchange, KAUFMAN replied, "I spoke to [the Marketing Director of Melrose CU] and turned down some additional purchases on another station. I know he has been in contact with you. I suggest that next week you try to work out some package with him that meets our needs."

   29.   In addition to the trips funded by Media Company-1, ALAN KAUFMAN, the defendant, received free trips from other Melrose CU vendors. For example, in or about 2011, a different media company ("Media Company-2"), with which Melrose CU advertised, paid for KAUFMAN and his girlfriend to fly to

12

Stockholm, Sweden, to attend a professional hockey game. In or about 2014, a professional sports company ("Sports Company-1"), with which Melrose CU advertised, paid for KAUFMAN to attend a professional football game in San Diego, California. In or about 2015, Sports Company-1 also paid for KAUFMAN to attend the National Football League draft held in Chicago, Illinois.

30. KAUFMAN did not seek approval for these vendor-paid trips from the Melrose CU Board, nor did he disclose these vendor-paid trips to the Melrose CU Board, in violation of Melrose CU's Anti-Bribery Policy.

**Statutory Allegations**

31. The allegations contained in paragraphs 1 through 6 and 26 through 30 of this Indictment are repeated and realleged as if fully set forth herein.

32. From in or about 2010 through in or about 2015, in the Southern District of New York and elsewhere, ALAN KAUFMAN, the defendant, as an officer, director, employee, agent, and attorney of a financial institution, to wit, Melrose CU, did corruptly solicit and demand for the benefit of a person, and corruptly accepted and agreed to accept, a thing of value greater than $1,000 from a person, to wit, vendors of Melrose CU, including Media Company-1, Media Company-2, and Sports

Company-1, with the intent to be influenced and rewarded in connection with business and a transaction of such institution.

(Title 18, United States Code, Sections 215(a)(2) and 2.)

## FORFEITURE ALLEGATIONS

33. As a result of committing one or more of the offenses charged in Counts One, Two, and Four of this Indictment, ALAN KAUFMAN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offense, including but not limited to (i) a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and (ii) all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at Section 17, Block 15, Lot 18, 175 High Pond Drive, Jericho, New York, 11753.

34. As a result of committing one or more of the offenses charged in Counts One and Three of this Indictment, TONY GEORGITON, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all property constituting, or derived from, proceeds

GEORGITON obtained directly or indirectly, as a result of the commission of said offense.

### Substitute Assets Provision

35. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

        (Title 18, United States Code, Section 982;
      Title 21, United States Code, Section 853; and
       Title 28, United States Code, Section 2461.)

_____        _____
FOREPERSON                                GEOFFREY S. BERMAN
                                                 United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v. -

**ALAN KAUFMAN, and**
**TONY GEORGITON,**

Defendants.

### INDICTMENT

19 Cr.

(18 U.S.C. §§ 215, 371 & 2.)

GEOFFREY S. BERMAN
United States Attorney.

**A TRUE BILL**

_____
FOREPERSON

7/10/19 - Filed Sealed Indictment
ac - A/W issued.